Hiatt v. The Fraternal Home.

---

ELLEN O. HIATT, Appellant, v. THE FRATERNAL HOME, Respondent.

St. Louis Court of Appeals, February 17, 1903.

1. Fraternal Beneficiary Associations: MEMBERSHIP: INITIATION INTO LODGE. Revised Statutes 1899, section 1408, by requiring fraternal beneficiary associations to have a lodge system, intends that no person shall become a member of such an association until he has been initiated into one of its lodges.

2. ———: ———: ———: BENEFIT CERTIFICATE, WHEN RIGHTFULLY ISSUED. And until one has been initiated into a local lodge of a fraternal association, the association can not rightfully issue a benefit certificate to him.

3. ———: ———: ———: BY-LAWS: CERTIFICATE MUST BE COUNTERSIGNED. Where, by the by-laws of a fraternal beneficiary association, its certificates were not binding until countersigned by the secretary and president of the local lodge, and a certifi-

cate was not countersigned until after the beneficiary herein had deceased, the certificate was void.

4. ———: ———: DEPUTY ORGANIZER OF LODGES, DUTY OF. Where a deputy organizer of a fraternal beneficiary association had no authority, either under his appointment by or contract with the supreme lodge, to collect dues and assessments, an arrangement made by him with the secretary of a local lodge, whereby he was to perform these duties, was not binding on either the supreme or local lodge.

5. ———: ———: ———: CERTIFICATE, VALIDITY OF: ESTOPPEL: AGENCY. Where the secretary pro tem of a local lodge was induced to accept the money of an applicant for insurance after his decease, and immediately on ascertaining the fraud tendered the money back to the party paying it, who would not receive it, and there was no administrator of the deceased's estate to whom it could be tendered or paid, and the secretary kept the money for the rightful claimant, whenever he appeared, the lodge was not estopped to deny the contract of insurance.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

### STATEMENT.

The defendant is a fraternal beneficiary society organized under article 2, chapter 12, Revised Statutes 1899. The order has a lodge system with supreme and subordinate lodges, a ritualistic form of lodge work, a secret initiatory ceremony with signs and passwords and a representative form of government. Its supreme executive authority is vested in a supreme lodge. This body has a supreme president and a supreme secretary and medical examiner. The principal business office of the order is located at Hamilton, Caldwell county, Missouri. Foster E. Ackley is, and has been since the organization of the association, its chief medical examiner and either its actual or acting supreme secretary and its chief manager, in fact, the evidence shows that the executive duties of the supreme lodge have been entrusted wholly to him.

Subordinate lodge No. 6, of the order, is located at

Springfield, Missouri. On July 23, 1900, William Hiatt, made application for membership in the order and applied for two thousand dollars insurance on his life for the benefit of his mother, Ellen O. Hiatt, of Lexington, Kentucky. He was examined by a local physician of the order at Springfield, and, on July 31, 1900, was duly elected to become a member, by local lodge No. 6. His application for insurance and his medical examination were forwarded to the home office and were approved by Dr. Ackley and the following certificate issued and forwarded to George Ragsdale, secretary of local lodge No. 6, at Springfield, to-wit:

"2992. $2000

"The Fraternal Home, Hamilton, Missouri. Keeps the wolf from the door.

"Copyrighted 1899 by the Fraternal Home.
Age 27. Rate 80c.

"This certifies that William M. Hiatt is a member of the Fraternal Home Lodge No. 6, at Springfield, State of Missouri, and within ninety days within receipt of satisfactory proofs of his death, there shall be paid to Ellen O. Hiatt (mother) if living, if not, to his legal representative, the sum of Two Thousand dollars.

"The conditions, benefits and provisions, printed or written by the society on the back hereof, are a part of this certificate.

"The benefits herein shall be incontestible from this date.

"It witness whereof, the Fraternal Home has caused its corporate seal to be hereunto afixed and these presents to be signed by its supreme president and supreme secretary, at Hamilton, Missouri, this 25th day of July, 1900.

"WILLIAM W. ANDERSON,
"Supreme President.

(Supreme Seal.)
"FOSTER E. ACKLEY,
"Supreme Secretary."

Ragsdale was confined to his home at the time by illness and a secretary pro tem (J. J. Hibler) was elected to act in his stead during his illness. Ragsdale, however, retained possession of the certificate.

By-law No. 69, of the order, after prescribing the manner for making application for insurance and requiring a medical examination to be had, provides as follows:

"Upon complying with the above the secretary shall send the application and medical examiner's report to the supreme medical director for review. At the first regular meeting of the lodge thereafter he shall be balloted upon. If three black balls are cast the applicant shall be rejected, and can not again make application for a period of three months. He may be in waiting at the time the ballot is taken, and, if elected, shall be initiated. But if he fails to be present for initiation at such time, or the first regular or special meeting thereafter, the fees paid shall be forfeited, unless by special dispensation of the Supreme Lodge he is permitted to appear for initiation at a later date. Where the applicant fails to appear for initiation as above required and the fees are forfeited, if he again wishes to apply for membership he must be re-examined, but shall not be required to again pay the admission fees. If the application is accepted by the supreme medical director, a benefit certificate shall be issued, signed by the supreme president and supreme secretary for such amount as the supreme medical director shall authorize, but not to exceed $2,000 from eighteen to and including forty-five years of age at nearest birthday; $1,000 from forty-five to and including fifty years of age at nearest birthday, and $500 from fifty to and including fifty-five years at nearest birthday. Provided that no person shall be admitted under eighteen or over fifty-five years of age. Said benefit certificate shall be sent to the secretary of the local lodge to be countersigned by the president and secretary thereof and delivered to the applicant when

he is initiated and pays the following fees to the local secretary, viz.: One assessment, one month's reserve fund, one month's supreme lodge per capita tax, and one month's local lodge dues, and shall be liable for all subsequent benefit assessments in accordance with the laws of the fraternity. The benefits given under certificate applied for shall begin when the above requirements are complied with. . . .

"At any time before the initiation of an applicant, the lodge may by a majority vote refuse to initiate, in which case the benefit certificate, with a certified statement of the action of the subordinate lodge, shall be immediately forwarded to the supreme secretary."

Local lodge No. 6 has weekly meetings. Hiatt did not present himself at the meeting on July 31, when he was elected to become a member, or at any subsequent meeting, for the reason he was sick, which sickness resulted in his death, on August 9th, at eighteen minutes past four o'clock p. m.

On or about July 31st, Hiatt, through a friend, paid to one Scott, a deputy organizer of the order, one dollar and twenty cents in full for one assessment, one month's reserve fund and local lodge dues to September 1, 1900. Scott, on the ninth day of August, but after the death of Hiatt, paid the money to J. J. Hibler, secretary pro tem of local lodge No. 6, and took the following receipt therefor:

"Aug. 9, 1900.

"Springfield Lodge No. 6, at Springfield, State of Mo.: Received of William M. Hiatt the sum of one and 20-100 dollars.

"Benefit fund assessment No. 3, 80 cents; month's supreme lodge per capita to first weekday of September, 1900, 15 cents; month's reserve fund to first weekday of September, 1900, 10 cents; month's local lodge dues to first weekday of September, 1900, 15 cents. Total $1.20.

"J. J. Hibler, Secretary."

No. 642.

At the time Scott paid the money to Hibler he had possession of the certificate and knew that Hiatt was dead. Neither Hibler or T. W. Flitton, president of the local lodge, had, at the time, heard of the death of Hiatt. Scott, to induce them to countersign the certificate, falsely represented to them that Hiatt's mother wanted to start that night to Lexington, Kentucky, with her son to recuperate his health, and by this false statement induced Hibler and Flitton to countersign the certificate and deliver it to him. On the same evening Scott delivered, or caused to be delivered, the certificate to plaintiff. This certificate so procured is the foundation of this suit.

Scott had been appointed deputy organizer by the supreme lodge for counties in the neighborhood of Greene, but had not been appointed deputy organizer for Greene county. The local lodge, however, had appointed him organizer for it.

The by-laws made it the duty of the secretary of a local lodge to collect all assessments and other dues and to remit the assessments to the supreme lodge. It was his duty also to deliver all certificates of insurance to members of the lodge who had been initiated and paid the requisite fees, and all certificates of insurance issued to members of local lodge No. 6, were forwarded to him with instructions to have them properly countersigned by the secretary and president of the local lodge and to collect the assessments and other dues and forward them to the grand lodge.

Ragsdale, the secretary, testified that when Scott was elected deputy organizer of the lodge he told him he would expect him to get the policies and deliver them and collect the advance assessments and get the people into the lodge; that the deputy organizers always had done so and that Scott promised that he would; that while he was sick he delivered to Scott eight or ten certificates under this arrangement, but not the Hiatt certificate; that he went away from home before Hiatt

died and supposed Scott got the certificate from his wife.

Ragsdale further testified that he had received instructions from the supreme secretary to deliver policies and collect the money and to have applicants initiated as soon as we could; that the instructions were contained in letters from the supreme secretary.

He did not produce these letters, said he presumed he had destroyed them.

He further testified that it had been the practice of local lodge No. 6, to collect the dues and deliver certificates of insurance to applicants before initiation and that there were forty-nine members, or certificate holders, who had received certificates of insurance who had never been initiated in to the order; that some of these persons had held their certificates and paid assessments and dues for two years.

Other witnesses testified that they held certificates of insurance in the order and had paid dues regularly but had never been initiated.

Dr. Ackley testified that Scott, as deputy organizer, had no authority to collect any money except the admission fee; that he had been the actual or acting secretary of the order from the date of its organization, had received all its mail and superintended all of its correspondence; that he never wrote Ragsdale that certificates of insurance might be delivered and the assessment collected before the initiation of the applicant, and that there was no knowledge or notice on his part, or on the part of any officer of the supreme lodge that certificates were to be delivered, or were being delivered, prior to the initiation in the local lodge to the persons for whom they were intended. That the first time he ever heard of such a thing being contemplated was when a member of the local lodge No. 6 at Springfield, wrote him a letter asking him if it was admissible to deliver a policy to a member without first initiating the candi-

date. This letter was written by J. B. Ketcham, and that was all he ever heard about it. The letter, however, did not contain any intimation that it was being done, but only that there was a question involved on which the lodge at Springfield desired to be thoroughly informed. He says: "I never heard that a certificate had been delivered prior to initiation until this matter about Hiatt came up. In answer to Ketcham's letter I wrote him that a certificate could in no event be delivered prior to the initiation; that deputy organizers such as Scott had no authority to receive advance assessments and dues," and if they did so it was without his authority, and if Scott did it he did it without his authority or knowledge, or the knowledge or authority of any one connected with the supreme lodge. He further says: "After we got possession of all the information regarding the Hiatt certificate and its delivery, the matter was presented with the information to the board of directors of the defendant, and they rejected the claim on the ground that he was never a member of the order."

The contract of Scott, as deputy organizer, with the supreme lodge was read in evidence and it showed that his authority to collect money was restricted to the admission fee.

The issues were tried by the court, who rendered judgment for the defendant.

Plaintiff took the usual steps to preserve her exceptions and appealed.

*Heffernan & Heffernan* and *Geo. D. Ragsdale* for appellant.

(1) Countersigning and delivering certificates by the local lodge officers are merely ministerial acts and the contract of insurance may be enforced even though they are not done in the manner prescribed by the by-laws, and it is not necessary that the policy ever be

signed or delivered, provided that its delivery is fully intended. Brownfield v. Ins. Co., 35 Mo. App. 54; Kantrener v. Life Ins. Co., 5 Mo. App. 581; Hale v. Ins. Co., 32 N. H. 295; Franklin Ins. Co. v. Colt, 20 Wall. 560; Niblack on Benefit Societies (2 Ed.), p. 276. (2) Rules prescribing to what officer of an order dues and assessments must be paid are simply for the regulation of the business. If the money gets into the hands of treasurer it matters but little by what path, so far as the member and beneficiary are concerned. Ferrie v. Supreme Council, 15 N. Y. St. 155; Niblack on Benefit Societies, p. 507; Thompson on Corporations, p. 4633. (3) The duty of seeing that the by-laws are enforced is upon the order. McMahon v. Maccabees, 151 Mo. 537. (4) Scott having habitually collected advance assessments and dues the society is estopped to deny his authority. It was extended by implication. Roeding v. Sons of Moses, 2 N. Y. Supp. 712; Fire Ins. Co. v. Ward, 90 Ill. 545; Supreme Lodge K. of P. v. Weathers, 177 U. S. 260. (5) The local lodge secretary and Scott, the local lodge deputy, and supreme lodge deputy, were both acting in the capacity of general agents, having charge of all the order's business at Springfield, and Scott having a supervision of the Springfield district. Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90. (6) Wherein the certificate of membership issued to William M. Hiatt and defendant's constitution and by-laws conflict, defendant will be bound by its certificates. David v. Old People's Society, 39 N. W. 803; Niblack on Benefit Societies (2 Ed.), pp. 294 and 295. (7) The defendant by accepting and retaining to this day the advance dues and assessments of William M. Hiatt, and having never offered to return it to Hiatt, nor to any one authorized to represent him, and not having tendered it into court for its disposal, is certainly estopped to deny the contract. Gray v. National Benefit Association, 2 N. E. 477; Davis v. Krum, 12

Mo. App. 287; Watson v. Biglow, 47 Mo. 415; Niblack on Benefit Societies (2 Ed.), pp. 571-2-3.

OPINION.

BLAND, P. J.—1. Section 1408, R. S. 1899, from which defendant derives its power to issue certificates of insurance, declares fraternal beneficiary associations to be corporations formed and carried on for the *sole* benefit of its members and their beneficiaries and not for profit; requires that they have a lodge system, a ritualistic form of work and a representative form of government. By requiring a lodge system the statute evidently intended that no person could become a member of these orders until he was initiated as a member of one of its lodges. The by-laws of the defendant expressly so provided.

William Hiatt, never having been initiated into the lodge, never became a member of the association and was a person to whom the association could not rightfully issue a certificate of insurance. Matkin v. Knights of Honor, 82 Tex. 301. The only right that Hiatt had at any time was the right to become a member. Under a by-law of the order, which was a part of his contract, he lost this right by failing to present himself for initiation not later than the next meeting after his election. He let the time pass in which he might be initiated, notwithstanding his election, without first obtaining a dispensation from the supreme lodge permitting the local lodge to initiate him. This he did not procure. At the time of his death he was neither a member nor possessed of the right to become a member.

But it is contended by plaintiff that the association had waived the necessity of an initiation to entitle Hiatt to his certificate of insurance. That Ragsdale, secretary of the local lodge, acted upon the assumption that initiation into the lodge of the order was not requisite to the right to insurance, and that a large per cent of

the members of the lodge entertained the same notion, and had acted upon it, is apparent from the evidence, but that either Ragsdale or any member of the local lodge was led into this belief by any action of the supreme lodge or instructions from any officer of the supreme lodge, either by correspondence or otherwise, the evidence, in our judgment, fails to establish. This loose and unauthorized course of conduct can only be accounted for upon the theory that some of the officers of the local lodge misinterpreted the instructions they had received from the supreme lodge, and were inattentive to the provisions of the by-laws and misunderstood the provisions of the statute of the State from which the order derived its existence and powers.

But aside from these considerations the certificate is sued on as a complete and fully executed contract. Under the by-laws it could not be fully executed or become a complete contract until countersigned by the secretary and president of the local lodge. It was not signed by these officers until after Hiatt was dead. The living can not contract with the dead, nor complete the execution of a contract that was partially executed with a living person but now dead. The evidence is full, complete and uncontradicted that the signatures of the secretary and president of the local lodge to the certificate were obtained by the false and fraudulent misrepresentations of Scott. It was no part of Scott's duty as deputy organizer, either under his appointment or under his contract with the supreme lodge or under his appointment by the local lodge, to deliver certificates of insurance or to collect dues and assessments. The arrangement which he made with Ragsdale, secretary of the local lodge, to perform these duties was not binding either upon the grand lodge or the local lodge, and neither are responsible for his acts in this regard, much less for his fraudulent act in procuring the signatures of the officers of the local lodge to the certificate sued on.

2.   It is contended that the lodge received Hiatt's money and is therefore estopped to deny the contract of insurance.   There is no question of estoppel raised in the case either by the pleadings or by the evidence. But if the question were properly in the case we would have to decide it against plaintiff's contention.

The evidence is that Hibler, as secretary pro tem, received the money from Scott; that as soon as he ascertained that Scott had deceived him and perpetrated a fraud both upon him and the association he went to him and tendered the money back but Scott would not receive it.   Hibler then tried to pay the money to the local lodge but it would not take it, nor would the supreme lodge have it.   There was no administrator of Hiatt's estate to whom Hibler could pay or tender payment and he now had the money holding it for the rightful claimant whenever it presents himself.

From no view of the evidence does there appear the semblance of merit in the plaintiff's case and the judgment is affirmed.   *Reyburn* and *Goode JJ.*, concur.