THE STATE ex rel. NATIONAL COUNCIL OF
    KNIGHTS AND LADIES OF SECURITY v. WIL-
    LIAM H. ALLEN et al., Judges of St. Louis Court
    of Appeals, and NELLIE M. STARK.

In Banc, February 17, 1925.*

1. **LIFE INSURANCE: Benefit Certificate: Monthly Premium: Conver-
    sion into Old-Line Insurance.** A provision for twelve monthly pay-
    ments per year does not convert a benefit certificate into an old-
    line or stipulated-premium policy, where the stated payments are
    not fixed in character, but must be increased if insufficient to afford
    statutory security.

2. ———: **Fraternal Beneficiary Association: Old-Line Insurance:
    Lodge System.** The fact that defendant did not have a lodge system
    and ritualistic form of work in the one community where the holder
    of the certificate sued on resided, does not establish that defend-
    ant, duly incorporated in another state and admitted to do business
    as such in this, was not a fraternal beneficiary association.

3. ———: ———: ———: **General Lodge System: Omission in One
    Community.** The defendant, having been incorporated as a fraternal
    beneficiary association in Kansas and duly admitted as such to do
    business in this State, and having proved that it had a supreme
    governing and legislative body, and twenty-five hundred subor-
    dinate lodges in operation, in none of which is there any evidence
    or claim that it did not proceed in full accord with the require-
    ments of the statute and of the supreme lodge in the matter of a
    lodge system with ritualistic ceremonies of initiation of mem-

*NOTE—Decided December 30, 1924; motion for rehearing filed;
motion overruled February 17, 1925.

bers and regular monthly meetings, except in the one community in which the insured resided, must be held to be a fraternal beneficiary association, exempt from the operation of the general insurance law; and a provision in the certificate sued on that only one-fifth of its face would be paid in case of the suicide of the holder is not nullified, nor the certificate converted into an old-line policy, by the fact that certain agents, not connected with a local lodge, came to the community where the holder resided, solicited insurance, received the insured as an applicant upon the street, immediately took him to a physician's office and had him examined, and without anything further being done, or attempted to be done, the applicant, upon the payment of the stated premium and without being initiated in any subordinate lodge, received said certificate. The fact that the lodge in the community where the certificate-holder resided had ceased to hold meetings and that he was not given a ritualistic initiation into the order, did not transform his certificate into an old-line policy.

4. ———: ———: ———: **Estoppel: Acceptance of Payments.** The acceptance by the supreme officers of a fraternal beneficiary association for nearly four years of the regular monthly dues from a holder of a certificate, would operate to estop the society to set up his lack of formal initiation, and to put him, by reason of the estoppel, into the society as a member, and to place his certificate, for insurance purposes, on the same basis as other certificates issued to regularly initiated members.

5. ———: ———: ———: **Duty of Supreme Lodge: To Compel Stated Meetings of Subordinate Lodges.** The statute is satisfied, according to its terms, if "the subordinate lodges or branches shall be required by the laws of such society to hold regular or stated meetings once a month," and does not denounce any penalty in case the supreme lodge does not or cannot compel every subordinate lodge to hold a meeting every month; and the court has no power to adjudge that the failure of the local lodge to hold meetings is such an omission of duty on the part of the supreme lodge as authorizes the court, as a penalty, to adjudge a certificate, issued to an applicant after the local lodge had ceased to initiate members or to hold stated meetings, to be an old-line policy, and thereby compel the society to pay to the beneficiary an amount in excess of that agreed by the contract to be paid in case the holder committed suicide.

6. ———: ———: ———: **Conflict in Opinions: Application of General Insurance Laws.** Any ruling which subjects a fraternal beneficiary association, when moving within its legal sphere, to the general

insurance laws, and which applies the provisions of the general law respecting suicide of the insured to such societies, conflicts with the decisions of this court; and a ruling of the Court of Appeals that a certificate, issued to an applicant who had not been formally initiated into any subordinate lodge and who resided in a community where the local lodge had ceased to hold stated meetings, was thereby converted into an old-line policy, gives to those things undue weight, and conflicts with the decisions of this court, because by technical construction and indirectly it destroys the society, as a fraternal beneficiary association, by subjecting it to the general insurance law.

Citations to Headnotes; 1 to 5, Mutual Benefit Insurance: 1, 29 Cyc. 63; 2, 29 Cyc. 8; 3, 29 Cyc. 8, 11, 64; 4, 29 Cyc. 185; 5, 29 Cyc. 11; 6, Courts, 15 C. J. par. 308.

## *Certiorari.*

RECORD QUASHED.

*A. W. Fulton* and *Hostetter & Haley* for relator.

(1) The general provisions of a statute must yield to special provisions where there is a conflict and where the general provisions in one part of the statute are inconsistent with the more specific provisions in another part. Hanford v. Mass. Mut. Ben. Assn., 122 Mo. 50; Claudy v. Royal League, 259 Mo. 92; State ex rel. v. Garesche, 258 Mo. 552. (2) Corporations doing business under the Fraternal Beneficiary Society Act are not subject to any of the provisions or requirements of the general insurance laws, except as therein stated. State ex rel. Yeomen v. Reynolds, 287 Mo. 169; Tice v. Sup. Lodge, 204 Mo. 349.

*D. A. Ball* and *A. J. Murphy, Jr.,* for respondent.

(1) The question is the total failure of the relator to comply with the law relating to beneficiary associations, especially Sec. 6399, R. S. 1919. None of the requirements of said section were complied with. State ex rel. Am. Yeomen v. Reynolds, 287 Mo. 173; State ex rel. Peters v. Reynolds, 214 S. W. 122. (2) No case decided by the Supreme Court involved facts similar to

those presented in the case now here presented. Such being the case the Supreme Court, in the *certiorari* proceeding, will not quash the opinion. State ex rel. Cont. Ins. Co. v. Reynolds, 290 Mo. 372; State ex rel. Railroad v. Allen, 291 Mo. 206; State ex rel. Ins. Co. v. Allen, 250 S. W. 399. (3) Section 6399 defines a lodge system and declares members must be elected, initiated and admitted in accordance with its constitution and by-laws, rules and regulations, etc. If not complied with renders it an old-line insurance company. Young v. Ry. Assn., 126 Mo. App. 332. (3) The relator knew of the manner in which the local lodge at Frankford was being conducted; its agents Davis and Morris, as the record shows, were on the ground at its attempted organization and for some time thereafter and personally solicited persons, including Earl Stark, to apply for a certificate through them and be examined by a physician, and policy would be issued. Davis and Morris were agents of relator. Golding v. Modern Woodman, 250 S. W. 933; Hereford v. Mystic Workmen, 200 Mo. App. 387. The manner of soliciting members and the issuing of policies, without in any manner complying with Section 6399 was continued for at least four years, and was so open and public that if relator exercised any supervision over local lodges at all, he must have known it. Thomas v. Modern Brotherhood, 176 S. W. 507. Besides, the record shows that Mrs. Fields so wrote the relator. (4) Whether the relator was doing business as an old line insurance company or fraternal beneficiary, is not to be determined by what it calls itself, or its business, but by the character of the contract involved and the manner in which relator conducts its business. McDonald v. Bankers Life, 154 Mo. 618; Jennings v. National American, 179 S. W. 790.

JAMES T. BLAIR, J.—Nellie M. Stark sued relator on a benefit certificate it issued on the life of her son, Earl M. Stark. She recovered judgment for the full

amount, and this was affirmed by the St. Louis Court of Appeals. It is this record of that court which the writ of *certiorari* brings here. The cause was heard in Court in Banc and an opinion rendered. A motion for rehearing was sustained, and the cause was reargued at this term. Earl M. Stark committed suicide, and this is the fact which gave rise to the original action and gives rise to the controversy. Relator had tendered an amount it conceded to be due.

A proper understanding of what the Court of Appeals held and why it so held can best be had, in this case, by setting out its opinion, which is as follows:

"Plaintiff is the beneficiary in an insurance certificate issued by the defendant, the National Council of the Knights and Ladies of Security. The policy was for $1000, with the provision that if the insured committed suicide within five years after the delivery of the certificate then the beneficiary should receive one-fifth of the amount of the certificate, less certain reductions to be made in favor of a reserve fund. Insured died by suicide within five years of the date of the certificate. The cause was tried by the court, a jury being waived, resulting in a judgment with interest in favor of plaintiff for $1017.13. Defendant appeals.

"The petition is in usual form.

"The answer pleaded that defendant was a fraternal beneficiary society, as defined by Article XV, Chapter 50, Revised Statutes 1919, Sections 6398 to 6437, and that as such it was duly licensed to transact business in Missouri as a fraternal beneficiary society; that the insured committed suicide; set up certain clauses and provisions in the certificate and application for membership made by the insured, and also the constitution and laws of the society relating to suicide of members and the abatement of rights resulting therefrom, and admitted liability to the extent of $153.75.

"The reply is a general denial.

"The suit was instituted August 11, 1919, and prior to the institution of the suit the defendant tendered the plaintiff the sum of $153.75, the amount due under the policy on a suicide basis, as provided in the certificate and by-laws of the order. This was again offered plaintiff at the trial. The offer was refused, plaintiff claiming the full amount provided by the terms of the certificate on the ground that the policy under the facts and circumstances attendant was a regular old-line insurance policy, and that the defense of suicide was unavailing.

"The trial developed that the defendant is a fraternal beneficiary society organized under the laws of the State of Kansas. It was duly licensed as such to do business in the State of Missouri during all the time covered by this controversy. The defendant in November, 1914, organized, or sought to organize, a subordinate council at Frankford, Pike County, Missouri. There is evidence tending to show that in December of that year there was an initial meeting of the council, the membership comprising some forty persons. A hall was rented for the purpose of the initial meeting. There was a second meeting at which certain members were 'obligated' as officers of the council. There was another meeting held subsequently, and still later, in January, 1915, an attempt was made by three persons to hold a meeting, but without success. Thereafter no other meetings were either held or attempted to be held. The certificate issued to the insured is dated June 10, 1915. He died April 12, 1919.

"The course of the trial is about as follows: Plaintiff introduced the policy sued on, same being dated June 10, 1915, and countersigned by national officers June 14, 1915, and also made proper proof of death of insured. It was admitted that insured made all payments assessed against him. Plaintiff thus rested her case in chief.

"Defendant introduced the deposition of John V. Abrahams, residing at Topeka, Kansas, who was the

national secretary of the defendant corporation at the time, and who testified that there are between two and three thousand subordinate councils of the defendant organization; that the local councils are unincorporated, and described the manner of application and election by ballot in the local council of new members; that the members are required to make one payment each month, but that the payments may be made quarterly, semi-annually or annually in advance if the members so desire; that the national executive committee of the defendant society passed on the certificate of Earl M. Stark, and approved same on a suicide basis, which amounted to $153.75 and which was sent to the financier of the council at Frankford for tender to the beneficiary; that it was contrary to the rules of the society to admit members without initiation or obligation, but that they had no agent to see that the local councils were obeying the rules of the society; that he had no knowledge as to whether the Frankford council was violating any of the rules of the defendant society in reference to initiation or obligation of members.

''On cross-examination, witness said defendant had an accumulated fund or surplus of $1,700,000; that it owned real estate which it was required to take by reason of a debt.

''Defendant then offered in evidence a number of exhibits, being the coroner's report of the death of the deceased; proof of death by suicide; constitution and by-laws of the society; defendant's authority to do business in the State of Missouri; the charter of the National Council of the Knights and Ladies of Security, and nine monthly reports purporting to have come from the local council at Frankford, among which was the report for June, 1915, noting that Earl M. Stark, beneficiary certificate number 384215, was initiated June 15, 1915, said report being signed by Mayme Fields, financier.

''In rebuttal plaintiff introduced Mrs. Mayme Fields, who testified that she was one of the original members,

joining in December, 1914; that at the second meeting she was elected financier, and that she had served in that capacity up to the date of the trial in October, 1920. She testified that in December, 1914, a man named Davis, and a lady whose name she could not recall, came to Frankford, and organized a local council; that they had three meetings; that she attended one or two of the meetings, and at one of them she was obligated as financier; that it was her understanding that she was obligated as an officer and never initiated as a member; that there were no meetings held or attempted to be held after January, 1915. · She was asked how the company did business after that date, to which she answered: 'Well, there was a deputy sent there and he went around and got the members and they were examined and the papers sent in;' that the deputy would send the papers off and when a policy was returned to her, or to the deputy, it would be signed by her as financier and by the president, and that then the policy would be turned over to the applicant. Witness testified that no person or persons to whom policies were issued after the original attempt to organize made application to the local lodge for membership, and that no vote by the members of the order at Frankford was ever taken upon any application; that the method followed was as indicated; that is, that certain agents would have the applicants go to a medical examiner and sign the necessary papers; that the papers were then sent to the supreme officers at Topeka, Kansas, and a policy would come back and be delivered to the applicant; that such was the one and only method employed after January, 1915. There was never an election of officers held after the initial meeting in 1914; that her duties as financier were to collect the money and send same to the supreme order; that after the meeting in January, 1915, the secretary, Mr. Howard, left the community, and witness thereafter signed her name as secretary; that no records were kept of the organization except what she kept as to the col-

lection of money; that no minutes were kept of the council at Frankford. When asked whether the insured in June, 1915, made application for membership and was voted upon by the local council, witness answered: 'I don't remember anything about it. We never had any council;' and that insured was never voted upon. Witness explained that in her report of June, 1915, she indicated that Earl M. Stark was initiated June 13th; that she did this because that was the date insured took up his certificate, and that the deputy told her to put that date there; that such date was the time applicants took up their certificates, and that the deputy was there at the time this particular certificate was taken up; that this deputy's name was Davis; that members were solicited by these deputies and no report could be made to her as financier until the policies came back; that no one from the main body ever came to examine the books or look into the affairs of the local council, nor were there any inquiries made as to the methods of its transactions.

"On cross-examination, witness testified that when members failed to pay their dues they were suspended by being dropped from the roll at the main office; that she mailed the report for June, 1915, to the head office, with the notation that Earl M. Stark was initiated June 15th; that she had in her office a charter signed by the national president with seal affixed, but that the rest of the charter was blank, that is, not filled out or signed by any local officer. Witness testified that there were no books showing the election and initiation of members after she assumed the duties of secretary in January, 1915; that special agents would come to Frankford, secure applicants and take them to a medical examiner who would send to the home office the application and the medical report, whereupon a policy would follow. The following questions and answers appear:

"'Q. Now, Mrs. Fields, in sending these monthly reports to the head office you never reported to them in any of these monthly reports that you were not meeting

and that the local council was not passing on these suspensions or reinstatements, did you? A. They knew we wasn't meeting.

" 'Q. Well, you made the reports just in the regular way as if that had been done? A. I wrote them a letter and told them we had no meetings.'

"Witness I. D. Howard testified for plaintiff that he was a member of the organization at Hannibal, Missouri, and that when the lodge was proposed at Frankford he temporarily acted as secretary of same; that he went, under the direction of a deputy from the home office, to Frankford to assist in the opening of the local council; that the deputy had a number of written applications for membership, among them the application of Mrs. Fields, the financier, and that ritualistic work was performed at the meeting. On cross-examination, this witness testified that after the second, or possibly the third, meeting they were unable to get any attendance and all efforts to hold lodge meetings were abandoned; that it took a quorum of ten members, officers and all, to transact business; that thereafter witness left the locality and Mrs. Fields signed necessary documents as financier and secretary.

"E. A. Fields testified for plaintiff that he held a policy in the Knights and Ladies of Security; that he was a charter member at Frankford; that he thought the council had three meetings, all told, and that he attended one of them; that he was told that he was president of the local lodge, although he was not present at any election; that he was never initiated that he knew of, but that he was 'obligated' as president of the local lodge at one time; that deputies would come to the locality and solicit and secure persons to take certificates much in the manner described by witness, Mrs. Fields; that in all there were 'a half dozen of such deputies there.'

"Mrs. Isabelle Bucks testified for plaintiff that she was a charter member of the lodge at Frankford and held a policy; that she never attended any of the three

meetings; that she never went through any 'initiation or anything of that sort.' When asked how she got her policy, she said: 'Well, this lady who Mr. Howard spoke of, I forgot her name, is the one that did most of the talking to me, and she was the one that really wrote me up.' Witness testified that she then went to a physician and was examined, and that the next thing she knew her policy came to her; that thereafter she paid Mrs. Fields the necessary dues; that she had never attended a meeting of the lodge; that there is no such lodge of this organization in Frankford, and that the lady who secured her application was soliciting for the defendant society.

"Plaintiff, testifying in her own behalf, said that she induced her son, the deceased, to become a member of the society; that she suggested to Mr. Davis, the solicitor or agent, that she wanted her son to take out a certificate, because he had two little boys dependent upon him; that while talking to Mr. Davis her son came across the street, and that Mr. Davis then 'wrote it down in front of Lowry's, and he went straight up to Dr. Kennedy's office and was examined;' that Mr. Davis went with him, and that she personally knew that her son, the insured, never was initiated in any local council, and that when she talked to Mr. Davis about the initiation he, Davis, got ugly, and that she made no further inquiry.

"There were four or five other witnesses introduced by plaintiff to show that they held certificates in the organization and that they were never initiated, and that no lodge meetings were ever held or attempted to be held during their membership. These witnesses, however, applied for membership subsequently to the date of the insured's certificate, and this testimony was admitted over defendant's objection that it was immaterial.

"This is a fair resume of the evidence in the case. The defendant made a written request of the court to make a finding of facts separate from the conclusions of law, as authorized by the statute. Same is as follows:

"'Suit on insurance policy for $1000.

" 'Defendant company makes tender of the sum of $160 being one-fifth of the face value of the policy, less reserve fund, as is provided by laws of said company, and resists payment of any further sum on account of said policy, and urges as a defense that the insured committed suicide on the —— day of ————, 1919, and that by reason thereof, under the terms of the policy contract sued on, plaintiff is not entitled to recover more.

" 'Plaintiff contends that the policy contract is in form and substance, a regular, old-line policy contract:

" 'First, because the compensation, or premium, for said insurance of $1000 is a fixed and stipulated amount under the terms of the policy; and the amount to be paid at the death of the insured is fixed and certain.

" 'Second. That although the defendant may be organized and incorporated under the laws of the State of Kansas as a fraternal beneficiary association and as such duly authorized and licensed to do business in the State of Missouri, the record in this case shows that defendant company failed to comply with the laws, rules and requirements of such society or association as conditions precedent to its exemption from the general insurance law of Missouri governing and controlling regular, old-line policy contracts.

" 'In compliance with the request of defendant for findings of fact herein, the court finds the same as follows:

" 'That the defendant company, The National Council of the Knights and Ladies of Security, was at the time of the issuance of the benefit certificate or policy of insurance sued on in this case and ever since that time has been a corporation organized under the laws of the State of Kansas, and has been at all times, both prior to the issuance of said policy and ever since, licensed in the State of Missouri as fraternal beneficiary association, and was at the time of said policy and ever since duly authorized and empowered to do business in the states of Kansas and Missouri as a fraternal beneficiary society,

or association.  That the by-laws of said National Council of the Knights and Ladies of Security were offered and admitted in evidence and constitute a part of the record in this case; that on the 10th day of June, 1915, defendant company issued its policy herein sued on to Earl M. Stark, for the sum of $1000; that as compensation, or premium, for said $1000 insurance the insured paid $50, to be deducted from the face of said policy at death of insured, and the additional fixed sum of ninety cents per month, on the 10th day of each succeeding month, during the life of said policy; that the plaintiff herein is named as beneficiary in said policy; that all premiums due on said policy were paid up to the death of insured in 1919; that on the 2nd day of June, 1919, proof of death of the insured was made to defendant company and payment demanded of the face value of said policy, to-wit: the sum of $1000 less the $50 deducted as a part of the reserve fund of said company. That insured was not voted on for membership, nor was he inducted into said order, The National Council of the Knights and Ladies of Security, by any initiatory or ritualistic ceremony or service, nor were there any meetings, or place of meeting, for the so-called Frankford Council No. 2651 of said defendant company said to be located at Frankford, Missouri; that insurance was only verbally solicited by one acting as agent for defendant company when he entered upon negotiations for said contract of insurance herein sued on; that he was given his policy herein sued on by defendant upon his passing satisfactory physical examination made by defendant's physician and upon the payment of the fixed premium as above stated; nor was the insured at any time ever received or inducted into any secret, fraternal, or social relation to defendant, The National Council of the Knights and Ladies of Security, by an initiatory or ritualistic service or ceremony, or by receiving or taking any obligation or oath relating or appertaining to said fraternal society or association, the National Council of

the Knights and Ladies of Security, defendant herein, nor was any such ceremony or obligation offered or tendered to said insured at any time, this failing to bring the contract herein sued on within the exemptions and privileges of the law relating to fraternal beneficiary associations and assessment companies. I further find that the insured did not contemplate suicide at the time the same was issued to him. I further find that Earl Stark, the insured, committed suicide by shooting himself with a revolving pistol on the 21st day of April, 1919.'

"Defendant assigns as error the court's holding that the defendant was an old-line insurance company and not a fraternal beneficiary society in so far as issuing the certificate at bar is concerned, and therefore not entitled to the benefits, privileges and exemptions accorded such societies by the Act of the General Assembly of Missouri of March 30, 1911 (now Art. 15, chap. 50, R. S. 1919), and that the court erred therefore in denying defendant the right to settle with plaintiff on a suicide basis.

"Our first attention, therefore, is directed to determine whether the findings of fact by the court sitting as a jury is sustained by substantial evidence.

"It is well settled that the findings of fact by the trial court in a jury-waived law case are attended on appeal with the same presumption of verity which clothes the verdict of a jury, and such findings will not be disturbed if same is supported by any substantial evidence whatever; and where the evidence adduced is such that reasonable men may draw more than one inference, or the evidence reasonably tends to sustain the finding made, such finding is absolutely conclusive upon the appellate court and should not be interfered with. Such, in effect, is the language of Judge FARIS in In re Lankford Estate, 272 Mo. 1.

"We have examined the record and find that there is abundant competent evidence to sustain the findings of fact made by the trial judge in all matters therein speci-

fied, except the finding that Earl M. Stark at the time of receiving the certificate paid $50. The $50 contemplated by the court in this finding, it is very clear, was to be deducted from the policy when same became due upon the death of the insured. In all other matters we think the court in its findings was well supported by the evidence. It is definitely established that the insured was not voted on for membership, or induced into the order of the defendant society by any kind of initiation or ritualistic ceremony, and that the society had no meeting place and no meetings for the so-called local lodge; that the insurance was verbally solicited by an agent of the defendant; that the insured was given a policy upon his signing an application, and passing satisfactory physical examination made by a physician of the defendant and upon the payment of a certain premium; that the insured was never required to take an obligation or oath in such fraternal order. It also appears that no such ceremony or obligation was offered or tendered at any time to the insured. We think that the court was correct in holding, in so far as this certificate is concerned, that this defendant failed to bring itself within the exemptions and privileges of the law relating to fraternal beneficiary associations. There is no showing that the insured contemplated suicide within five years from the issuance of same. Plaintiff is entitled to recover the face of the policy, and the trial court committed no error in so holding.

"We have before us the application, the by-laws and the constitution of the defendant society, and all of course provide that suicide of the insured within five years of the delivery of the certificate shall entitle the beneficiary to only one-fifth of the amount of the certificate, less certain deductions for a reserve fund. And it is true that the laws of the defendant society provide that the National Council shall not be bound by knowledge of or notice to officers or members of local councils, and that the officers of the society and officers of the local

councils are not authorized to waive any provisions of the by-laws of the society 'which relate to the contract between the member and the medical examiner, as provided for in the laws relating to the society, whether the same be now in force or hereafter enacted.' And, further, that neither shall any knowledge or information obtained by any subordinate council or officer or member thereof, or by or to any other person, be held or construed to be the knowledge or notice to the National Council, or the officers thereof, until after said information or notice be given in writing to the national secretary of the order. Defendant's counsel insistently rely upon Section 6418, Revised Statutes 1919. This statute is as follows: 'The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members, shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members.' However, as we understand this case, we are not concerned with the question of waiver by the local organization of any of the requirements of the contract entered into, nor, indeed, any waiver by local officers of anything required by the constitution and laws of the society. Our statute law demands certain requirements of fraternal beneficiary associations when such society seeks the benefit and privileges accorded same under our law, and one requirement is that a lodge system shall be maintained (Sec. 6399, R. S. 1919); that the members shall be elected, initiated and admitted in such lodges under the rules of the lodge, and that there shall be a prescribed ritualistic ceremony and regular and stated meetings of such local lodges.

"It appears from the facts and circumstances set out in this record that the defendant society, through certain agents or deputies, though there is no direct proof that these agents and deputies came with authority

from the head office, came to Frankford and acted for the head office; and it is a fact that these agents, not connected with the local lodge came to this territory and solicited insurance, receiving this insured as an applicant on the street, immediately took him to the doctor's office and had him examined, and without anything further being done, or attempted to be done, the applicant, upon the payment of the premium, received this policy. From the testimony of the financier who received the payments on the certificate for the defendant company, it appears that she wrote several times that no lodge system was being maintained at Frankford, and she also testified that the home office knew that this requirement was not being complied with. Under such state of facts, we think the court very correctly held that this defendant was not entitled, so far as this certificate was concerned, to be treated as a fraternal beneficiary association. [Hiatt v. Fraternal Home, 99 Mo. App. 105; Young v. Railway Mail Assn., 126 Mo. App. 325, 103 S. W. 557; Porter v. Loyal Americans, 180 Mo. App. 538, 543, 167 S. W. 578 and other cases there cited; Thompson v. Modern Brotherhood of America, 189 Mo. App. 15, 176 S. W. 506.]

"But defendant's counsel argue that such conclusion creates the anomalous situation of holding that the defendant society, admittedly a fraternal beneficiary association elsewhere, is not a fraternal society in so far as the policies at Frankford are concerned. We do not understand that the compliance elsewhere in this State of the defendant society with our laws in anywise affects the contract sued upon here. The court in this case is called upon to determine whether the defendant, so far as this contract is concerned, is entitled to the exemptions and the benefits of such laws. We are of the opinion that so far as this certificate is concerned same must be treated as a regular life insurance policy. No protection can be had by the defendant in this case under the nonwaiver clause of its constitution and by-laws or

under the statute above cited. Counsel for defendant argue that in the report of Mrs. Fields, the financier, there was a column to indicate the initiation of members for the month of June, 1915, and that it was noted that the insured was initiated June 15, 1915. The application is dated June 6, 1915, at which time the insured applied and was examined. The certificate is dated June 10, 1915, and according to Mrs. Fields she was directed by the deputy to note in her report the date such policy came back and was delivered to the member as the date of initiation, which she did.

"Not even a pretense was made by the defendant to follow the groove cut out by our law for fraternal societies. Certainly a substantial compliance with our laws is necessary. The certificate was either no contract of insurance at all, or it was a regular life insurance policy. The holding of this court is that the trial court in its finding of facts is well supported by the evidence, and that the court correctly applied the law to such facts. Judgment affirmed."

I. The Court of Appeals was right in holding there was no evidence tending to show insured paid $50 at the time of receiving his policy. The net result of the deduction provided for was to make the benefit certificate one for $950. Nor is there any force in the suggestion made here by counsel that the provision for twelve monthly payments per year converts the benefit certificate into something else, to-wit, an old line or stipulated premium policy. Under our law (Sec. 6406, R. S. 1919) no domestic fraternal beneficiary society can be incorporated, or foreign society admitted, unless it does make provision for "stated periodical contributions sufficient to provide for meeting the mortuary obligations contracted, when valued" in a prescribed way, and (Sec. 6421, R. S. 1919) the stated payments are not fixed in character; if they fall short of affording the statutory security, they not only may but must be increased. [See Secs. 6422, 6423, R. S. 1919.]

**Fixed Premiums.**

II.    It is established for the purposes of this case that relator is duly incorporated in Kansas and duly admitted to and doing business in Missouri as a fraternal beneficiary association.    The statutory definition (Sec. 6398, R. S. 1919) of such a society is:    "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with Section 6402, is hereby declared to be a fraternal benefit society."    It is not held by the Court of Appeals that relator failed in any of these particulars, unless it is meant to be held that, so far as concerns Stark's certificate and those like it, there was no provision for or, at least, no actual "lodge system with ritualistic form of work."

Lodge System.

III.    The statute specifically defines what is required by our law to constitute "operating on the lodge system." Section 6399, Revised Statutes 1919, provides:    "Any society having a supreme governing or legislative body and subordinate lodges, or branches by whatever name known, into which members shall be elected, initiated and admitted in accordance with its constitution, laws, rules, regulations, and prescribed ritualistic ceremonies, which subordinate lodges or branches shall be required by the laws of such society to hold regular or stated meetings at least once in each month, shall be deemed to be operating on the lodge system."    That relator was complying with these provisions is proved by its certificate of admission (Sec. 6413, R. S. 1919) and proof that it had more than 2500 active subordinate lodges in operation, against none of which, excepting that at Frankford, is there any evidence or claim that it did not proceed in full accord with

Compliance with Statute.

the statute and the requirements of its supreme lodge. The society had a representative form of government, provided by its constitution, composed, elected and operating in accordance with Section 6400, Revised Statutes 1919.

The relator was, then, a duly admitted fraternal beneficiary society which was organized and admitted in full compliance with the requirements of our law. If nothing else had appeared, it would be conceded by all that it would be exempt from the general insurance law provisions (Sec. 6401, R. S. 1919) and that the certificate provision for payment of only one-fifth of the face in case of suicide would be effective and applicable to this case. What is held to take Stark's certificate out of this exemption and entitle his beneficiary to recover the face of the certificate is that: "The defendant society, through certain agents or deputies, though there is no direct proof that these agents and deputies came with authority from the head office, came to Frankford and acted for the head office; and it is a fact that these agents not connected with the local lodge came to this territory and solicited insurance, received this insured as an applicant on the street, immediately took him to the doctor's office and had him examined, and without anything further being done, or attempted to be done, the applicant, upon the payment of the premium, received this policy. From the testimony of the financier who received the payments on the certificate for the defendant company, it appears that she wrote several times that no lodge system was being maintained at Frankford, and she also testified that the home office knew that this requirement was not being complied with."

The mention of the activities of the "agents and deputies" who came to Frankford and in soliciting insurance "acted for the head office" adds nothing to the case. The solicitation, application and examination of the applicant lawfully could and usually does precede his initiation and have no necessary connection with it

that affects this case. The fact that these agents "received the insured as an applicant on the street" has no bearing on the question decided. The facts which underlie the court's ruling are simply that the *Frankford* lodge ceased to hold lodge meetings; that Stark was not given a ritualistic initiation into the order; but that he merely applied for membership, was examined by the lodge physician and, after his application, accompanied by a report of the medical examination, and one by the "financier" affirming that he had been *initiated,* had been received and approved and a benefit certificate issued and sent to the "financier," she delivered it to him, on payment of the sum then due, without further ado, though he had never been voted on or elected to membership.

The statement by the Court of Appeals that the "financier" wrote "several times that no lodge system was being maintained at Frankford, and that she also testified that the home office knew that this requirement was not being complied with" has no specific foundation in the finding of facts made by the trial court.

IV. On the facts stated the Court of Appeals held that relator "was not entitled, so far as this certificate was concerned, to be treated as a fraternal beneficiary association," and cites several decisions, which follow:

In Hiatt v: Fraternal Home, 99 Mo. App. l. c. 114, 115, Scott, a deputy organizer, managed to procure the necessary countersigning of a benefit certificate by local lodge officers after the death of Hiatt, who had applied for membership, but had never been initiated into the lodge. There had been no delivery of the certificate during Hiatt's life. It was held that he had never become a member and no certificate could lawfully issue to him, and that the certificate was not countersigned and, for that reason, also, ineffective.. In Porter v. Loyal Americans, 180 Mo. App. l. c. 542 et seq., Porter died before initiation and before he re-

<span style="margin">Review of Cases.</span>

ceived a certificate. It was held that he was an ''out-sider, a non-member, and an assessment paid by such a person or a benefit paid to him is a course of dealing beyond the power given by law to such associations. It is a condition precedent that is necessary to give life to the benefit certificate. The following cases hold there must be an initiation to create liability'' (citing many decisions). The court then held there was no estoppel and affirmed a judgment for the society. In Thompson v. Modern Brotherhood of America, 189 Mo. App. 1. c. 18 et seq., it was held the trial court was justified in finding the society had, for a long time, with full knowledge, accepted dues from one in an occupation proscribed by the by-laws, and was thereby estopped to claim a forfeiture on the ground of insured's entrance into the prohibited business. In Young v. Railway Mail Association, 126 Mo. App. 1. c. 332 et seq., it was held the facts showed the association did not purport to be a fraternal beneficiary association. The court said: ''It is shown by the evidence that defendant had no initiatory ceremony, and no ritualistic form of work; that the members were admitted into the association by simply paying the required amount of dues. The defendant association is, therefore, not a fraternal association, within the provisions of the Act of March 8, 1897, but is a straight-out accident insurance company.''

With the greatest respect to our brethren of the Court of Appeals, it does not clearly appear that the cases cited justify the conclusion reached. Relator *is* a fraternal beneficiary society. That is established in this case. The Railway Mail Association was not, in any sense, such a society. That was all that was held with respect to it which is connected with any phase of this case. The Modern Brotherhood of America admitted and insured one who was lawfully admissible and insurable. Thereafter, he entered a proscribed occupation. With knowledge, the society continued regularly to accept his payments and was held to be thereby estopped to deny him

membership on the ground that his occupation was what it was. There is no question about Stark's eligibility.

**Estoppel.** In the two other cases it was held the certificate-holder had never been initiated and, therefore, it was held they could not lawfully be insured by the society. If this applies to Stark, his certificate is a nullity, and the action must fail for that reason. In fact, it seems to us that the taking of his payments would estop the society to set up his want of initiation. If this is true, it would, by reason of the estoppel, put Stark into the society for insurance purposes. It would entitle his beneficiary to claim under his certificate despite the want of initiation. Such estoppel would merely preclude the society from denying his membership. When this was enforced against the society, the case would stand with Stark shown to be a member because the society had put itself in a position such that the courts would not permit it to deny his membership for the purpose of defeating his claim. He would then stand as a member of the society in possession of a benefit certificate, and his beneficiary would be entitled to whatever his certificate, as a member of the society in good standing, gave her—and nothing more.

Of course, if a fraternal beneficiary society is not in fact such a society and is not constituted as such an organization, but practices fraud upon our State and its laws, other questions would arise and state **Compulsory Stated Meetings.** authorities doubtless would be concerned about the matter. There is no showing of this kind in this case. The simple failure of the society in the case of one person, or several persons, to require initiation, or, in the case of one local lodge out of 2600, to *compel* the local members to hold meetings does not present that feature. In fact, the statute is satisfied, according to its terms, if "the subordinate lodges or branches shall be *required by the laws of such society* to hold regular or stated meetings at least once in each month." The laws of relator contained that re-

quirement. The society is a mutual organization, not organized for profit, which elects its own chief officers, and the statute does not denounce any penalty in case the supreme lodge does not or cannot compel every subordinate lodge to hold a meeting each month. Nor do we think a court has power to affix to such an omission on the part of a single lodge the penalty sought in this case, as a means of increasing the amount due the beneficiary of a society member who is a member by estoppel, if at all, and thereby penalize every member of this fraternal organization and enable the members of any local lodge to change their fraternal beneficiary certificates into old line insurance policies by the simple device of ceasing to hold meetings of their lodge—and, nevertheless, escape such increased liability with respect to their obligations to members of such lodges as shall meet regularly.

There are cases holding that a foreign fraternal benefit society which writes certificates here without having been regularly admitted cannot claim exemption from our general insurance laws. That does not affect the question here. Such admission is a condition precedent to such exemption. Relator was regularly admitted. There are other decisions which hold that a certificate in which one is named as beneficiary who is not eligible as such under our law, though eligible under the law of the state of the society's origin, is not exempt from the general insurance law. That is not this case. Nor is the principle applicable. The reason for the ruling has no relevance to the question presented to the Court of Appeals. Nor did that court cite any of these cases in support of its ruling.

**Other Omissions.**

V. The question in this case is whether the ruling made conflicts with decisions of this court. It must be kept in mind that the fraternal beneficiary society law is a part of every certificate holder's contract, and by that law the society's constitution and by-laws, charter and articles of association, and amend-

**Conflict.**

ments thereof are part of that contract. By the law and the contract the society is exempt from the general insurance law, and any ruling which makes a society, when moving within its legal sphere, subject to the general law, conflicts with decisions of this court. [State ex rel. v. Reynolds, 287 Mo. l. c. 172, et seq.] To apply the general law respecting the suicide of the insured to a fraternal beneficiary society conflicts with decisions on that particular question. [Tice v. Knights of Pythias, 204 Mo. l. c. 354, 355.] In addition, to apply a rule to this case which would necessarily view the society as having forfeited its character as a fraternal beneficiary society because it issued a certificate to one or several unitiated persons, and one lodge out of 2600 failed to hold regular meetings, is to give these things undue weight, to give a few insured non-members, in by estoppel, if at all, a gross advantage over those insured in the statutory way, reward the negligence of a local lodge and those connected with it, mulct all others with an expense out of proportion to any benefit their certificates secured them, give the fact of uninitiation an illogical effect, and that by a technical construction of the law and the certificate of a character this court has disapproved. [Armstrong v. Modern Brotherhood, 245 Mo. l. c. 160 et seq.]

In view of these considerations, this record ought to be quashed. It is so ordered. All concur, except *Walker* and *Woodson, JJ.*, who dissent.